## Ortt *v.* Schwartz, Appellant.

*Promissory notes—Consideration—Duress—Threat to imprison maker's daughter.*

The maker of a promissory note given to a corporation cannot be held liable on the note, where the uncontradicted facts are that the maker owed the payee nothing, that the note was obtained by the counsel and a director of the payee through threats that a daughter of the maker, who had been in the payee's employ, would be arrested, prosecuted and put in jail unless the father gave the note, that the father was greatly frightened and alarmed at the threats, and executed the note when he was in a highly excited and nervous condition.

Duress is that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness.

Argued Oct. 18, 1915. Appeal, No. 45, Oct. T., 1915, by defendant, from judgment of Municipal Court Philadelphia Co., Nov. T., 1914, No. 96, on verdict for plaintiff in case of Charles H. Ortt, Trustee of the Bankrupt Estate of Keystone Trading Stamp Company of Philadelphia, Bankrupt. Before RICE, P. J., ORLADY, HEAD,

PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Assumpsit on promissory notes.    Before BONNIWELL, J.

From the record it appeared that the trustee in bankruptcy of the Keystone Trading Stamp Company brought an action against Jacob Schwartz to recover $266.66 with interest, alleged to be due upon two promissory notes of $133.33 each, drawn by Jacob Schwartz to the order of the Keystone Trading Stamp Company, both dated April 24, 1914, payable in three and six months respectively.

The defense was that the defendant received no consideration for the notes which had been obtained from him by threats to arrest his daughter, who had been in the plaintiff's employ, and who was charged with stealing trading stamps.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $274.10. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*A. S. Ashbridge, Jr.,* for appellant.—Any agreement entered into for the purpose of stifling or suppressing a threatened criminal prosecution is void, as against public policy: McGrory v. Reilley, 2 W. N. C. 587; Riddle v. Hall, 99 Pa. 116; Swope v. Jefferson Fire Ins. Co., 93 Pa. 251; National Bank of Oxford v. Kirk, 90 Pa. 49; Avery v. Layton, 119 Pa. 604; Appeal of Bredin, 92 Pa. 241; Pearce, et ux., v. Wilson, et al., 111 Pa. 14.

The question of "duress" is not a question of law for the court, but a question of fact for the jury: Donelson v. Woodward, 8 Atlantic 192.

*Alfred Aaron,* with him *Henry N. Wessel,* for appel-

lee, cited: Swope v. Jefferson Fire Ins. Co., 93 Pa. 251; Riddle v. Hall, 99 Pa. 116; Phillips, to use, v. Henry, 160 Pa. 24; Moyer v. Dodson, 212 Pa. 344; Sulzner v. C. L. & M. Co., 234 Pa. 162.

OPINION BY ORLADY, P. J., March 1, 1916:

In this action of assumpsit in the Municipal Court, the plaintiff, after offering the notes in suit in evidence, rested his case, and when the defendant had adduced evidence in support of his defense, the plaintiff did not offer any testimony in denial or explanation thereof, so that the undisputed facts are as follows:

Minnie Schwartz, the defendant's daughter, had been for several years in the employ of the Keystone Trading Company, of which the defendant was the treasurer. At a meeting of the officers of the company, when the president, three directors and a member of the bar who was the general counsel of the company were present, the defendant appeared in response to a notice from the president, and was informed by the counsel who was also a director, that the daughter was accused of stealing trading stamp books. After some conference between the parties a demand for $2,500.00 was made to cover the alleged loss, which sum was afterwards reduced to $1,-500.00. The statements by the counsel, in the presence of the other directors and who spoke for them, were—"If you will not produce the $1,500.00 then positively we will take action. I will arrest her and she will be in jail —your daughter positively shall be arrested."

The defendant testified, they were going to arrest my daughter and put her in jail. I had a week or eight days to talk about it. If she was guilty she would have to go to jail. They said, "If I go away from the office and not make the settlement, my daughter will be arrested and put in jail." I went around to the attorney's office and begged him again and again, and he said, "Well, it is no use. I know your people have money and you want so

and so. If she will not produce so much money, there will be trouble." I thought it was a disgrace to me, and I did not want anybody to know it. I cried like a child to a father. Similar statements were made through the week of negotiation, when to secure the release of his daughter, the defendant paid $200.00, and four or five days later, he borrowed on his interest in a life insurance policy, and from it raised and paid $500.00 more in cash, and gave notes aggregating $800.00, two of which, to the order of the Keystone Trading Company, for $133.33 each, are the notes in suit.

The defendant was corroborated, as to the statements made at the meeting, by the testimony of his counsel, viz: "The understanding was, if he paid $1,500.00, why no action or prosecution would be brought against his daughter, and if he did not pay it, the board of directors intended to prosecute her for stealing these trading stamp books." I told Schwartz not to pay the money, told him he was a fool if he did. He was very highly excited and nervous, he was crying in my office, in spite of my advice he insisted on making some settlement." The understanding was, "that if he paid the money there would be no prosecution." To satisfy Schwartz, a writing was given him reciting that—the Trading Stamp Company had made claim against Jacob Schwartz for the value of stamps alleged to have been taken by his daughter; it had been concluded to adjust the matter in dispute amicably, without resort to courts of law; that Schwartz has agreed to pay to the Trading Stamp Company the sum of $1,500.00 "in consideration of the agreement of the said company not to enter any suit or prosecution at law against the said Minnie Schwartz by reason of the premises" and on payment of said sum Minnie and Jacob Schwartz were to be released, etc., from all manner of actions, claims, etc., "whatsoever in law equity or otherwise." This was signed by the president, with the corporate seal of the company and witnessed by its attorney, who had effected the settlement.

At the conclusion of the evidence, the trial judge said to the jury, "Under all the evidence, there is no defense that would justify the case being sent to you for consideration; there was a full consideration for these notes, and as a matter of law, I feel impelled to direct you to find a verdict for the plaintiff, etc." A verdict for the full claim was rendered and the defendant appealed.

It is not pretended that Jacob Schwartz owed the Trading Stamp Company anything, or that the amount he agreed to pay was his debt or liability in any sense or, even accurate in amount as to the alleged defalcation, it being only the guess work of the directors; they could not ascertain any definite number of books that had been taken or by whom, nor was their value stated. They suspected Minnie Schwartz of being a thief, and fixed the amount of the reprisal at a sum near as they could determine the ability of Jacob to pay. We are not dealing with the criminal phase of the transaction in compounding an alleged felony, the only question being the sufficiency of the evidence to avail as a defense to the action on the notes, which were signed under the circumstances above given.

Agreements founded on the suppression of criminal prosecutions are void, as they have a manifest tendency to subvert public justice. The testimony adduced on the trial, taken with the so-called release, can have but one meaning, that testified to by the counsel for Schwartz— "if the money was paid by Jacob Schwartz, there would not be any prosecution of Minnie Schwartz," and if not so paid, then as stated by counsel for the company, "positively we will take action, arrest her and she will be in jail." This was the only consideration of the notes. As stated by Judge MOSCHZISKER in Sulzner v. Miller Co., 234 Pa. 162, "The doctrine which is now approved by the judicial mind, both in this country and in England, is, that any contract produced by actual intimidation ought to be void, whether arising from the result of merely

physical infirmity or from circumstances which might produce a like effect upon persons of ordinary firmness. . . . . . . Ordinarily, when no proceedings have been commenced, threats of arrest, prosecution or imprisonment do not constitute legal duress to avoid a contract; the threats must be made under such circumstances that they excite fear and imminent imprisonment." While no warrant was exhibited for the arrest of Minnie, and no physical violence was applied to Jacob Schwartz, if we give to this testimony its ordinary credence, it must be accepted as reasonably true that the continuing threats to prosecute and put in jail his daughter, and thus disgrace him and his family, frightened and alarmed him, so that he was highly excited and nervous, and that the money was paid and the notes given to purchase her immunity from a threatened prosecution for stealing some trading stamp books. It has no other color than a suppression of a charge of larceny and consequent imprisonment to secure the cash and these notes. Had the plaintiff supplied testimony in relation to the facts, its appearance might be otherwise, but they elected to allow the defendant to explain the whole situation and we deal with the record as they made it. Assuming that this defendant was a person of reasonable firmness, the imminent and immediate imprisonment threatened to his daughter, induced by the persistent threats of these plaintiff, would reasonably excite and terrorize a father so that his signature to these notes would be solely influenced through such intimidation and would constitute legal duress, so as to invalidate them: Moyer v. Dodson, 212 Pa. 344; Sulzner v. Miller Co., 234 Pa. 162. It could not be interpreted as other than such unlawful and improper pressure that practically destroyed the free agency of the maker of the notes. Duress is defined to be that degree of constraint or danger either actually inflicted, or threatened and impending which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. It consists not merely in the

act of imprisonment or other hardship to which the party was subjected, but, in the state of mind produced by those circumstances, and in which the act sought to be avoided was done, 9 Cyc. 443. A threat to resort to a criminal prosecution for an improper purpose, or for a wrongful motive, accompanied with such circumstances as would indicate a prompt execution of the threat, may be as effective in inducing a payment of money or the signing of a note, as an actual physical detention. It depends largely on the person, facts and circumstances surrounding the procurement. Where the threat whether of mischief to the person, property or reputation is such as to destroy the threatened party's freedom of will, the law will not enforce a contract executed under such a threat. Jordon v. Elliott, 12 W. N. C. 56. As early as the days of Lord Bacon, it was held, "So if a man menace me that he will imprison or hurt in body my father or my child, except I make unto him an obligation, I shall avoid this duress as well as if the duress had been to mine own person. Broom's Legal Maxims, 533, and this rule is as applicable to-day as when first announced.

The view taken by the trial judge was erroneous, and the question should have been submitted to the jury under proper instructions, so that that body would estimate the value of the evidence and determine its credibility: Haller v. Haller, 45 Pa. Superior Ct. 409.

The judgment is reversed, with a venire facias de novo.