# Powell, Appellant, *v.* Doyle.

*Practice—Judgment—Opening—New trial—Fraud — Perjury— Day in court.*

When a new trial is asked for, on the ground of perjury or other fraud, it will be granted only in case the fraud alleged is extrinsic in its character as distinguished from intrinsic.

In an action of assumpsit, where the defense was payment, and verdict was rendered for the defendant, it is too late after the expiration of the term, at which judgment was entered, to seek a new trial on the ground that defendant's evidence was perjured. Such fraud is intrinsic.

520, (1921).]     Syllabus—Opinion of the Court.

The reason for the rule is that there must be an end of litigation; and where a party had his day in court and knew what the issues were, he must have been prepared to meet and expose perjury then and there.

*Fraud—Extrinsic—Intrinsic.*

By the expression extrinsic or collateral fraud is meant some act or conduct by the prevailing party which has prevented a fair submission of the controversy. Where the alleged perjury relates to a question, raised in the record upon which there was a conflict to be determined in the trial, the fraud is intrinsic.

Wickel v. Mertz, 49 Pa. Superior Ct. 472, overruled.

Argued October 7, 1921.   Appeal, No. 49, Oct. T., 1921, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1919, No. 899, on verdict for defendant in the case of Fred H. Powell v. Elizabeth L. Doyle. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ.   Affirmed.

Rule to open judgment, set aside verdict and grant new trial.

The facts are stated in the opinion of the Superior Court.

The court discharged the rule.   Plaintiff appealed.

*Error assigned* was the order of the court discharging the rule.

*J. Joseph Stratton,* for appellant.—The authority to vacate, open or set aside a judgment or decree is incident to all courts of record: Fisher v. Ry. Co., 185 Pa. 602; In re Macoluso's Naturalization, 237 Pa. 132; Fuel City Mfg. Co. v. Waynesburg Products Corporation, 268 Pa. 441; Wickle v. Mertz, 49 Pa. Superior Ct. 472.

*Lincoln L. Eyre,* for appellee.

OPINION BY LINN, J., November 21, 1921:

The rule to be applied in determining this appeal was thus stated in McEvoy v. Quaker City Cab Co., 267 Pa

527 at 536; "......this court has adopted the same rule which is asserted in our previous citations, to the effect that when a new trial is asked for on the ground of perjury or other fraud, it will be granted only in case of fraud alleged as extrinsic in its character as distinguished from intrinsic evidence." In that case as in this, appellant, after the expiration of the term at which the judgment was entered on the verdict of a jury, had asked to have it opened and for a new trial. The definition of extrinsic and intrinsic fraud as stated in Bleakley v. Barclay, 75 Kansas 462, was accepted in the following quotation: "By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there: Pico v. Cohn, 91 Cal. 129. Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial." As the fraud alleged in this appeal is intrinsic and not extrinsic in character appellant has not brought himself within the rule entitling him to relief. He avers that defendant obtained a ver-

dict by false testimony given by herself and one Carter called on her behalf. Of course, at any time prior to the entry of the judgment and even thereafter during the term, the record was within the control of the court to furnish to appellant any relief to which in that time he might show himself entitled: Lance v. Bonnell, 105 Pa. 46, and we have no doubt that if the facts set forth in the petition now before the court had been called to the attention of the court within that time, a second trial would have been granted.

After the term the case stands otherwise, and necessarily so, upon grounds of public policy. "There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, interest rei publicæ, ut sit finis litium, and nemo debet bis vexari pro una et eadam causa.

"If the court has been mistaken in the law, there is a remedy by writ of error. If the jury has been mistaken in the facts, the remedy is by motion for new trial. If there has been evidence discovered since the trial, a motion for a new trial will give appropriate relief. But all these are parts of the same proceeding, relief is given in the same suit, and the party is not vexed by another suit for the same matter. So in a suit in chancery, on proper showing a rehearing is granted. If the injury complained of is an erroneous decision, an appeal to a higher court gives opportunity to correct the error. If new evidence is discovered after the decree has become final, a bill of review on that ground may be filed within the rules prescribed by law on that subject. Here, again, these proceedings are all part of the same suit, and the rule framed for the repose of society is not violated.

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary

trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. See Wells, Res Adjudicata, sect. 499; Pearce v. Olney, 20 Conn. 544; Wierich v. DeZoya, 7 Ill. 385; Kent v. Ricards, 3 Md. Ch. 392; Smith v. Lowry, 1 Johns. Ch. (N. Y.) 320; DeLouis et al. v. Meek et al., 2 Iowa 55.

"In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court": U. S. v. Throckmorton, 98 U. S. p. 61, quoted in McEvoy's Case, supra.

Relief was granted pursuant to the rule quoted in the following cases where the fraud was extrinsic: In Fisher v. Ry. Co., 185 Pa. 602, the court and one of the parties were imposed upon, as the opinion states by "the fraud of the plaintiff and his interpreter by which the verdict was obtained through false interpretation of the testimony." Obviously if the interpretation of the evidence of the witnesses was false, neither the court nor the jury tried the case really before them. In Cochran v. Eldridge, 49 Pa. 365, it appeared that one Townsend pretended to represent Eldridge at an arbitration, that Eldridge was ignorant of it, and that a judgment against

him resulted. "It will be noticed," said Justice DEAN in
Gazzam v. Reading, 202 Pa. 231, commenting upon
Cochran v. Eldridge, "that Eldridge never had his day in
court; was never heard to show, that he owed Town-
send nothing and therefore could owe the plaintiff
Cochran his transferee nothing; and the verdict [on a
feigned issue in the proceeding to open] settled the fact,
that these two were in collusion to obtain the judgment
against Eldridge. The fraud perpetrated was not only
upon the defendant, Eldridge, but upon the court, for
when judgment was entered upon the award, the implied
representation to the court, from its own records, was,
that Eldridge was represented in the proceedings re-
sulting in the award, whereas, as the court demonstrated,
this was false." In Hambleton v. Yocum, 108 Pa. 304,
a verdict was obtained by collusion among lawyers who
did not represent parties for whom they purported to
act, and who had no notice of the proceeding. This of
course was a fraud upon them and upon the court.

In Gazzam v. Reading, 202 Pa. 231 at 238, the court
says: "Every suitor in a dispute involving life, liberty,
property or reputation is entitled by right to one trial,
but not to two; if he gets more than one it is of grace,
not because of a fundamental right."

A consideration of the record now before us will show
that appellant's case is not within the rule as applied in
those cases. He brought suit in assumpsit to recover
$834.25, the balance alleged to be due for goods sold and
delivered and work and labor done after crediting on
account a payment of $250, made August 6, 1918, and
three payments of $100 each made September 3d, 12th
and 27th respectively. The affidavit of defense admitted
performance by plaintiff and averred that the debt had
been paid, specifying amounts and dates of payment
somewhat in excess of the total claimed in the statement.
The parties went to trial on November 12, 1919. A mo-
tion for a new trial was made on November 17, 1919, and
was discharged on December 15, 1919. On January 23,

1920, judgment was entered. On November 17, 1920, after the term at which judgment was entered, plaintiff filed a petition for a rule on defendant to show cause "why the judgment entered on the said verdict should not be vacated and plaintiff's motion for a new trial reinstated and plaintiff given leave to assign as additional reasons in support of said motion for said new trial the false and perjured testimony of said defendant, Elizabeth L. Doyle, and said John S. Carter." On that petition a rule was "granted on defendant to show cause why rule for a new trial should not be reinstated, etc., returnable......" Defendant filed no answer to the petition. The rule came on for hearing before the three judges of the court below sitting in banc on November 22, 1920; the court then granted appellant leave to file the additional reasons referred to in support of the motion for a new trial and they were accordingly filed. The case was heard by the court and on December 1, 1920, the rule was discharged. No evidence was taken on the petition. We have been furnished with the pleadings, the testimony taken at the trial, the charge of the court, the petition for the rule, and the reasons assigned for the new trial. From that record it appears that at the opening of the trial plaintiff offered in evidence the statement of claim and rested, whereupon defendant assumed the burden of proving payment as alleged in her affidavit of defense. In addition to the payments admitted in the statement of claim, she testified substantially as averred in her affidavit of defense that she made payments at various times; on one occasion paying the sum of $350 at Atlantic City, New Jersey, in September, 1918, in the presence of one Carter, a houseman. Other payments were testified to; she said she paid cash and received no receipts, and testified Carter was present upon only one occasion. She called Carter as a witness and he testified he was employed by her "though not regularly"; that he was in her employ at Atlantic City at the time helping her to pack up preparatory to coming

to Philadelphia. He said he remembered "seeing a gentleman. I cannot positively say whether that is him or not" (referring to plaintiff) and that he saw defendant pay him "an immense amount of money"; he was "positive of several hundred dollars." Defendant then rested, and in rebuttal plaintiff testified denying the receipt of the money referred to in the defendant's evidence; he conceded that he never gave her receipts for what she had paid; he called his bookkeeper with his books to show he had received only what he had credited in the statement. In them appeared what he described as "a mistake on the books" in that a payment said to have been received in August was posted after the items received in September were posted. He called one of his employees, Mr. Sweet, who testified to a conversation with defendant at a time not definitely fixed in which "she made the remark that she had not settled with Mr. Powell once." He also called a witness, Mr. Parker, who referred to a conversation with defendant in November, 1918, in which she said she would attend to some matter "as soon as she settled with Mr. Powell......" All this evidence on the issue of fact made in the pleadings was submitted to the jury fully and fairly in a charge by the late Judge WESSEL. The verdict was for the defendant, as has been stated.

The petition to vacate the judgment and reinstate the motion for a new trial, among other things, recited the fact that Carter testified as above and then averred that the testimony of defendant and Carter was false; that Carter was not employed by defendant or even present at the time described by both him and defendant; that the only sum paid at the time and place designated was $100 for which the statement of claim gave credit; that the testimony of defendant that she made other payments than those for which credit was given in the statement was false; that in March, 1920, Carter "confessed that the testimony given by him as aforesaid was false and untrue and he thereupon signed and made oath to a

written confession of said perjury," a copy of which was attached to the petition. The petition further averred that on March 24, 1920, appellant caused Carter and defendant to be arrested for perjury; that they were thereafter indicted for the offense and that when the indictments were called for trial Carter pleaded guilty and Elizabeth L. Doyle was convicted and that both were sentenced. The additional reasons for a new trial filed at the hearing of the rule, set forth that Carter and defendant testified falsely as has been stated with regard to the $350 and that she also testified falsely with regard to the other payments.

Assuming now that the court might properly have granted the petition for the reason assigned therein if the application had been made within the term, does the application present a case of extrinsic fraud or is the fraud intrinsic? The plaintiff was apprised by the affidavit of defense that defendant would offer evidence of payment. He therefore came prepared to combat such evidence and could not be surprised by her testimony that she had paid when her own affidavit of defense already so stated with dates and amounts. This is not a case therefore in which he was prevented by the defendant from offering his own evidence or presenting his case in any way he chose. Nor was anything done by defendant to mislead him in the preparation of his case. He was ably represented by his counsel and apparently his case was fully presented and the defense carefully scrutinized. There was therefore a real trial and a verdict by the jury on the issue in the case as made by the pleadings which was subsequently twice approved by the court below. The case contained none of the ingredients of extrinsic fraud referred to in the quotation from the Throckmorton case made above, or from any of the other cases cited. The fraud was intrinsic. A defeated suitor in the common pleas, with issues of fact determined against him there, cannot through the Commonwealth appeal to a jury in the criminal court to have

the facts found otherwise and, succeeding, use that second finding to demand a retrial in the common pleas after the term. The rule and its application have been so recently considered in the exhaustive opinion of the Supreme Court that we need say nothing more. See McEvoy v. Quaker City Cab Company, 267 Pa. 527. Appellant relies upon Wickel v. Mertz, 49 Pa. Superior Ct. 472; in the light of what has been said in the foregoing opinion, based upon the recent decision of the Supreme Court, we are now required to overrule Wickel v. Mertz.

The judgment is affirmed.