Willetts, Appellant, *v.* Willetts.

Argued March 14, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*W. H. K. Davey,* of *Lilley & Wilson,* and with him *Burger & Burger,* for appellant.—The court never acquired jurisdiction of the subject matter of the action and its decree was void: Allen v. McClellan, 12 Pa. 328; English v. English, 19 Pa. Superior Ct. 586; Andrews v. Andrews, 188 U. S. 14; Commonwealth v. Barnett, 199 Pa. 177. The fraud practiced upon the court, not only as to jurisdictional facts, but throughout the progress of the case was so flagrant as to re-

quire the vacating of its decree: Field v. Field, 67 Pa. Superior Ct. 355; Fleming v. Fleming, 83 Pa. Superior Ct. 554; Mahoney v. State Ins. Co., 110 N. W. 1041; 9 L. R. A. N. S. 490; McFadden v. McFadden, 91 Pa. Superior Ct. 301; Karras v. Karras, 80 Pa. Superior Ct. 173; Templeton v. Templeton, 86 Pa. Superior Ct. 142. The decree should be vacated on the ground of fraud affecting the Commonwealth of Pennsylvania: Bell v. Bell, 181 U. S. 175; Walton v. Walton, 84 Pa. Superior Ct. 368.

*Fred B. Gernerd,* and with him *Rodney A. Mercur,* for appellee.—The decree in divorce is res judicata: Krusch v. Krusch, 6 D. & C. Rep. 645; Crane v. Deacon et al., 253 S. W. 1068; Stearns v. Hewes, 256 Pa. 577. A decree in divorce will only be set aside for extrinsic or collateral fraud: Boring v. Ott, 119 N. W. 875; Greene v. Greene, 61 Am. Dec. 454; Gazzam v. Reading, 202 Pa. 231.

OPINION BY BALDRIGE, J., April 10, 1929:

In July, 1921, Elizabeth Willetts, the appellant, filed a libel in divorce in Bradford County, averring that she was a citizen of Pennsylvania, having resided in Philadelphia from July 1, 1919, to April, 1921, when she moved to the Borough of Athens, Bradford County, where she contemplated making her permanent residence "with friends and relatives of longstanding;" that she was married in the City of New York on December 31, 1914, to Frank Willetts, who was then and continued to be a resident of the City of New York; that she lived and cohabited with Frank Willetts as his wife until March, 1918, when he wilfully and maliciously deserted her.

W. T. Carey, Esq., was appointed master and filed a report on the 21st of June, 1922, recommending a divorce, and on the 3rd day of July, 1922, a divorce was accordingly granted. On the 9th of March, 1925,

Elizabeth Willetts presented her petition to Judge MAXWELL, the president judge of Bradford County, alleging that, notwithstanding her libel filed in the divorce proceeding, there was, in truth, no desertion in March, 1918, or at any other time, as her husband continued to live and cohabit with her until June 24, 1924; that she had been compelled to institute the divorce proceeding at the instance of her husband as she was under his influence and control; and that the testimony she gave before the master was under coercion and threats to kill, or otherwise, do her great bodily harm.

On June 7, 1926, before any decree was filed in the proceeding to vacate the decree of divorce, a petition was presented to amend her petition to vacate, alleging that the court was without jurisdiction as the libellant and respondent, not only lived together as husband and wife from 1914 to 1924, but that during all that time they were residents of New York, and not residents of Pennsylvania.

An answer was filed to this amended petition and the matter was disposed of by HON. GEORGE W. MAXEY, specially presiding, who filed an opinion and ordered the amendment to be filed. A large amount of testimony was taken and arguments were had before HON. CLAUDE T. RENO, specially presiding, who, in an opinion filed the 6th of June, 1928, discharged the rule to vacate the decree in divorce and dismissed the petition; from that decree this appeal is filed.

It is apparent that from the beginning to the end, this proceeding was saturated with fraud. Judge RENO found that the libellant and respondent lived together continuously as man and wife in the State of New York, from 1914 to 1924, except from February, 1918, to September, 1919, when the respondent was in France with the American Expeditionary Forces, but that during his absence he corresponded with his

wife who was then living in the City of New York; that on January 31, 1918, just prior to his departure to France, a ceremonial marriage was celebrated between the parties (they had been living prior thereto as common law husband and wife), at which time the respondent stipulated . that if he came back, there should be a divorce and dissolution of the marriage. On his return to this country, the respondent reminded his wife of her promise to secure a divorce and took the libellant to various cities in New York and New Jersey to consult with attorneys in regard to procuring a divorce. On November 20, 1920, he and the libellant went to the office of Charles E. Mills, Esq., an attorney at Sayre, Pennsylvania, and consulted him in regard to obtaining a divorce, and Mills was then retained as an attorney to institute a proceeding; that on July 4, 1921, they left their home in respondent's automobile, registered that night as man and wife, of New York City, at the Hotel Lee, Waverly, New York, and occupied the same room, and the following morning crossed into Pennsylvania, went to the office of their attorney, Charles E. Mills, Esq., when and where the libel was signed and verified before a notary in the office of Mills; and the respondent paid the attorney fee. The libellant and respondent then returned to New York, and later the respondent went to Sayre expressly for the purpose of being served with process. W. T. Carey, Esq., the master, fixed February 21, 1922, as the time, and the office of Charles E. Mills, Esq., as the place for taking deposition. The report of the master states that the libellant appeared and testified before the master on February 21, but she was in Sea Breeze, Florida, from February 13 until March 21, 1922, and therefore did not appear at that time before the master, but the court found as a fact that she later appeared and testified before the master on an unknown date, some-

time between March 21 and June 21, 1922. The court found further that neither the libellant nor respondent had, prior to the filing of the libel, ever resided in the Commonwealth of Pennsylvania; that for about five years prior thereto they had been living continuously together as man and wife in an apartment in New York City, and that a child had been born to them; that they continued to live together, notwithstanding the divorce proceedings, until June 28, 1924. The foregoing facts were not excepted to nor appealed from. Neither of the parties have been married since the granting of the divorce and the question of legitimacy of children or any other intervening rights are not involved.

The lower court was of the opinion that the application for the divorce was not explainable upon the ground of duress; that the libellant was a woman of more than ordinary firmness; and that during her absence from her husband in Florida when she was not under his immediate influence, she sent fifty ($50) dollars to her attorney in the divorce case.

A reading of the record leads us to the conclusion that there was not such constraint exercised by the respondent over the libellant as to dominate or destroy her freedom of will. The presumption of the law is that a person is possessed of ordinary firmness and strength and the burden is upon one alleging otherwise: Sulzner v. C.-L. & M. Co., 234 Pa. 162 (167); Ortt v. Schwartz, 62 Pa. Superior Ct. 70; 20 L. R. A. 484. No doubt the respondent is a domineering man and that he at times made threats against the libellant, but, on the other hand, she, at that time, was a woman of fifty-two (52) years of age, with no signs of mental weakness or other infirmities that would indicate that she was not entirely a free agent and with ability to take care of herself. We therefore concur

with the lower court in his conclusions that there was no duress exercised.

Judge RENO dismissed the petition for the principal reasons (a) that the lower court had jurisdiction, and having passed upon the merits of the question litigated, it is res-adjudicata, and (b) that as the libellant was a party to the fraud, she did not come into court with clean hands.

The great weight of authority is to the effect that a judgment will not be disturbed after the expiration of the term, except for extrinsic or collateral fraud promptly complained of after its discovery. The leading case in support of that principle, which has been generally followed, is that of the United States v. Throckmorton, 98 U. S. Supreme Ct. 93. Mr. Justice MILLER, in delivering the opinion in that case stated that there was no question of the general doctrine that extrinsic or collateral fraud vitiates the most solemn contracts, documents, and even judgments. The accepted distinction between extrinsic and intrinsic fraud is defined in Blakely v. Barclay, 75 Kansas 462, as follows: "By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and

there: Pico v. Cohn, 91 Cal. 129. Where the alleged perjury relates to a question upon which there was a conflict and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial.'' This definition has been followed by our own courts in McEvoy v. Quaker City Cab Co., 267 Pa. 527; Powell v. Doyle, 77 Pa. Superior Ct. 520; McFadden v. McFadden, 91 Pa. Superior Ct. 301. It should be noted in this definition that if the perjury relates to the testimony, the fraud is intrinsic, *unless there be a showing that the jurisdiction of the court has been imposed upon.*

In McEvoy v. Quaker City Cab Company, supra, it was. held unless the judgment is rendered by a court of competent jurisdiction, it is no judgment. If a court has no jurisdiction it has no authority to pronounce judgment (Miltimore v. Miltimore, 40 Pa. 151), and the court of itself cannot give jurisdiction, as Judge RICE, in English v. English, 19 Pa. Superior Ct. 586, states that "no matter how expressed, consent of the parties, even with the consent of the court added, cannot give the court jurisdiction of a libel in divorce based upon the allegations of cruel and barbarous treatment or of indignities to the person, unless the libellant shall have resided in the state at least one whole year previous to the filing of his or her petition or libel: Act of March 13, 1815, section 11, 6 Sm. L. 286. This prerequisite is not in the nature of a personal privilege or safeguard which the respondent may waive, or the court, in its discretion, dispense with.''

The Bradford county court did not have jurisdiction of the parties to this proceeding; they were not resi-

dents there under the court's finding. The perjury throughout the case was shown by such clear and convincing evidence that it established fraud beyond any reasonable controversy. The court was so imposed upon that but for the perjury, no divorce could have been granted. Not only the parties to the proceeding, who colluded to commit the perjury, but the attorney who filed the libel unquestionably knew that the libellant and respondent were both residents of New York, and his numerous letters to the parties when they were living there and his letter to Stetson, Jennings and Russell, of December 16, 1921, clearly indicate that there were no grounds for divorce The acts and the conduct of both the parties and their attorney prevented any fair submission of the controversy in the lower court and there was never any real contest, it was not genuine or honest litigation, but was simulated—the result of collusion between the parties. Extrinsic fraud operates, not upon the matter pertaining to the judgment, but the manner in which it is procured: 25 L. R. A. (new series) 1237; 15 R. C. L. 214, 215.

In 34 Corpus Juris, 282, it is stated that "fraud practiced upon the court is always ground for vacating the judgment, as where the court is deceived or mis' led as to the material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair."

Walton v. Walton, 84 Pa. Superior Ct. 366, is a case where the divorce was set aside as fraud had been practiced as to respondent's address and she had not been served, but in considering the principle involved in divorce cases, where fraud is alleged, Judge HENDERSON said, "The imposition complained of was not only on the respondent, but on the court, and it is due to the just and orderly administration of justice

that decrees be not obtained by the suppression of the truth, and this is especially true in proceedings in divorce in which a public as well as a private interest is involved." ...... "The foundation of the decree appealed from is the imposition practiced on the court and that this is sufficient to sustain such decree is clearly shown in Allen v. MacLellan, 12 Pa. 328; Boyd's Appeal, 38 Pa. 241."

Applying these different tests, we are satisfied that this case comes within the definition of "extrinsic fraud." Corpus Juris, page 900.

In the present case, there is no question of laches as the appellant alleges, and it is not denied, that she made application for relief shortly after she learned of the granting of the divorce. In any event, she sought this remedy but a few months after her husband actually left her.

The case of Field v. Field, 67 Pa. Superior Ct. 355, cited by the appellee, is somewhat similar to this case, but it was decided upon the facts involved in that particular case. The appellant was unquestionably guilty of laches as he waited five years with full knowledge of the facts before raising any question of fraud or collusion, and therefore under those special circumstances the court held the question of granting relief was within the discretion of the chancellor. But Judge WILLIAMS in that case said, "It (the court) had no power to change its decree except for some reason which would avoid it, such as want of jurisdiction or fraud in its procurement."

We cannot accede to the contention that it is a matter of good public policy in order to prevent repeated trials to acquiesce in such a fraudulent imposition upon our courts. The courts have always recognized that there is a public interest in divorce proceedings; that the state or commonwealth is a third party thereto; 9 R. C. L. 451; and it is not only proper, but it is

the duty of the court to frown on every form of fraud. Judge MAXEY, in his opinion permitting the amendment, well says that "the rule that 'he who comes into equity must come to court with clean hands' applies only to cases where the public interest is not affected by the matter in controversy. In the case at bar the dignity and honor of the court and the rights and interests of the Commonwealth of Pennsylvania, are as much involved as are the respective interests of the petitioner and the respondent. The doctrine of estoppel may be successfully invoked against personal litigants, but it cannot be successfully invoked against the Commonwealth. The peace and dignity of the Commonwealth transcends the personal rights and interests of either party to a wrong."

We are convinced that this fraudulent decree should have been set aside. As the lower court was without jurisdiction, we think it is unnecessary to discuss the question of the libellant taking advantage of her own wrong, other than to say that her corrupt conduct did not and could not give the court jurisdiction as there never was a valid judgment. The decree of the court below is reversed and the judgment in the divorce proceedings is vacated and annulled. Costs to be paid by the appellee.