Romanski Estate.

Argued April 11, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Eugene Nogi,* with him *Leo W. White, J. Julius Levy* and *Weintraub & Fass,* for appellant.

*James P. Harris,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 27, 1946:

In the distribution of an intestate's estate, is a claimant, as widow, barred from attacking the validity of a foreign divorce which she herself procured? The court below answered this question in the affirmative.

The decedent, a widower without children, on July 5, 1930, married the appellant, a widow with a child and issue of a deceased child. In 1933, the husband was committed to an institution for the insane, and in 1937, the wife was appointed guardian of his estate. He remained in the institution until his death on May 24, 1943. There was no issue by the marriage. In 1941 the wife went to Reno, Nevada, where she procured a divorce. In the divorce proceeding the wife falsely testified that she was a bona fide resident of Nevada, domiciled in that state. She bases her right to claim as widow upon the ground that the Nevada court had no jurisdiction over her and her husband and hence its decree was a nullity. The learned court below rejected the claim, holding that appellant was barred from attacking the decree which she had procured. This appeal followed.

We need not enter into a discussion on the extraterritorial effect of a divorce decree of a sister state, whose jurisdiction was challenged on the ground of fraud practiced upon the court: see *Williams v. North Carolina,* 317 U. S. 287; *Commonwealth ex rel. v. Esenwein,* 348 Pa. 455, 35 A. 2d 335, affirmed 325 U. S. 279. The court below found, and the interested parties agree,

that the appellant was never domiciled in Nevada and hence that court lacked jurisdiction to grant the divorce decree.

Conceding, therefore, that the foreign decree of divorce was invalid because of lack of jurisdiction, the question still remains: is a spouse barred in a proceeding, such as that before us, from attacking the validity of such a divorce which he or she procured?

While some courts regard a decree of divorce by a court without jurisdiction as a nullity, a majority hold that a spouse who procures such a decree will not be permitted to impeach it. The bases for such decisions are varied. Most of them are supported on the ground of estoppel or quasi-estoppel; others on general equity principles; that no one can profit for his or her wrong; that complainant must come into equity with "clean hands". See annotations in 153 A. L. R. 941, supplementing other annotations in A. L. R.: 140 p. 914; 130 p. 101; 122 p. 1321; 105 p. 817 and 39 p. 677. See also: 17 Am. Jurisprudence, Divorce and Separation, section 760; Restatement, Conflict of Laws, section 112; Freedman, Marriage and Divorce, Vol. 2, section 797.

Invalid foreign divorce decrees have been presented in varied cases resulting in decisions which cannot always be reconciled. One or both parties may have remarried on the faith of such a decree; a remarriage may have been either innocently contracted by one of the parties or with knowledge of the fraud. Rights of innocent parties to the second marriage and their children must be considered. In some cases the rights of the parties relate solely to property or financial matters. Perhaps the question has arisen more frequently in the State of New York than in any other jurisdiction. The earlier New York cases were frequently in conflict with each other. But in 1940 the New York Court of Appeals in *Krause v. Krause*, 282 N. Y. 355, 26 N. E. (2d) 290, carefully analyzed and distinguished the previous New York decisions. It was decided that where a spouse in-

vokes the jurisdiction of a foreign court he or she will not be heard to repudiate the judgment rendered in his or her favor *where only the property rights arising out of the marriage are involved,* but there is no estoppel in a "matrimonial action". This rule has been adhered to ever since. See *Vernon v. Vernon,* 288 N. Y. 503, 41 N. E. (2d) 792 affirming 262 App. Div. 431, 29 N. Y. S. (2d) 736; *Querze v. Querze,* 290 N. Y. 13, 47 N. E. (2d) 423; *In re Lindgren's Estate,* 293 N. Y. 18, 55 N. E. (2d) 849.

Pennsylvania adopted (not in the same language) this doctrine as early as 1929. In that year the case of *Willetts v. Willetts,* 96 Pa. Superior Ct. 198, was decided, opinion by Judge BALDRIGE. There a libellant had fraudulently obtained a divorce from her husband in Pennsylvania while the parties were in fact domiciled in New York. The wife was permitted to secure an annulment of the marriage. It was decided that the libellant, in the facts of that case, was not barred from attacking the divorce which she had obtained. The opinion adopts what Mr. Chief Justice MAXEY (then a judge in Lackawanna County), said upon preliminary procedural matters in the case: "the rule that 'he who comes into equity must come to court with clean hands' applies only to cases where the public interest is not affected by the matter in controversy. In the case at bar the dignity and honor of the court and the rights and interests of the Commonwealth of Pennsylvania, are as much involved as are the respective interests of the petitioner and the respondent. . . . The peace and dignity of the Commonwealth transcends the personal rights and interests of either party to a wrong."

It is to be observed that the *Willetts* case was an example of what the New York cases term a "matrimonial action". In this class of cases the Commonwealth is an interested party because of its concern with the marital status of its citizens. See *Braum v. Potter Title & Trust Co.,* 301 Pa. 365, 373, 152 A. 751; *English v. English,* 19 Pa. Superior Ct. 586, 599.

But where the litigation relates solely to marital property rights, and does not concern subsisting marital status, the Commonwealth is not regarded as an interested party. In such purely personal financial disputes, we have held that a libellant is barred from attacking the validity of a foreign divorce which he or she procured: *Miltimore v. Miltimore et al.*, 40 Pa. 151; *Richardson's Estate*, 132 Pa. 292, 19 A. 82; *Limber's Estate*, 284 Pa. 346, 131 A. 244.

Whether in cases where public interest makes the Commonwealth an interested party, equities such as innocent reliance on invalid decree; legitimacy of children, etc., may be considered (*Grossman's Estate (No. 1)*, 263 Pa. 139, 106 A. 86), is not now before us and therefore is not passed upon.

The facts in the present case relate solely to property rights arising out of the marriage. The matrimonial status was effectively terminated upon the death of the husband. The wife confesses that she committed perjury in the Nevada court when she swore that she was domiciled in Nevada and intended to reside there permanently. She seeks to excuse this wrong by stating that she committed it to prevent her husband's kin from receiving any part of her estate should she predecease him. Apparently her position is that had she died first the fraudulent divorce would have protected her estate from her husband, but as he died before her then she should be allowed to demonstrate her divorce was invalid and as she remained his widow was entitled to a spouse's share under the intestate laws. In such circumstances claimant cannot be permitted, solely for her own personal advantage, to attack the validity of the foreign divorce which she herself procured.

The learned court below found as a fact that "decedent left no legal heirs surviving him" and hence his estate "escheats to the Commonwealth of Pennsylvania." We have read the testimony and find no support for such finding. In order to escheat a fund, proceedings must

be had as prescribed in the Escheat Act of May 2, 1889, P. L. 66, 27 PS, section 1 et seq. Due notice must be made and hearings had to determine the existence of heirs and next of kin. When an award is made to the Commonwealth by escheat it thereafter holds the fund as owner. No such procedure was here followed. This fund should have been ordered paid into the State Treasury *without escheat*. See Act of April 21, 1921, P. L. 211, 27 PS, section 431 et seq.; Act of April 9, 1929, P. L. 343, sections 1309-10-11, 72 PS, section 1309 et seq.; *Link's Estate (No. 1),* 319 Pa. 513, 180 A. 1. At the bar of this Court counsel for the Commonwealth requested that the award be made in this manner.

The decree of the court, as herein modified, is affirmed, at the cost of the appellant.