*Decision will be entered under Rule 50.*

ESTATE OF CHARLES D. MARSHALL, DECEASED, MELLON NATIONAL BANK AND TRUST COMPANY, DORA N. MARSHALL AND JOHN N. MARSHALL, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19591. Promulgated April 27, 1951.

*Paul G. Rodewald, Esq., George M. Heinitsh, Jr., Esq.,* and *Carl Cherin, Esq.,* for the petitioners.
*J. Harrison Miller, Esq.,* for the respondent.

920

MURDOCK, *Judge:* The Commissioner no longer contends that the value of the entire corpus minus the value of the life estate is to be included in the gross estate of the decedent. His present position is that the value at the time of the decedent's death of a one-third interest in the remainders of the two trusts should be included in the decedent's gross estate. The Pennsylvania Intestate Act of 1917, P. L. 429, section 2, provided that a surviving spouse is entitled to one-third of the estate of a deceased spouse where more than one child survives. The Commissioner says that the decedent, if he had survived his wife, would have received a one-third interest in the remainders of the trusts under the intestate laws of Pennsylvania, he thus retained that interest until his death, and the transfers were, to that extent, "intended to take effect in possession or enjoyment at or after his death" within the meaning of section 811 (c) as amended by Public Law 378, 81st Congress, Chapter 720, 1st Sess., approved October 25, 1949, and referred to as the Technical Changes Act. He argues that the retained interest arose by the express terms of the trust and not by operation of law and that Dora gave no consideration to the decedent for the transfers in trust.

The petitioner argues that section 811 (c) (1) (C) does not apply because possession or enjoyment of all of the property could be obtained by beneficiaries who did not have to survive the decedent; in any event, no part of the transfers may be included in the gross estate because the decedent did not retain a reversionary interest in the property "arising by the express terms of the instrument of transfer and not by operation of law" within the meaning of section 811 (c) (2) enacted in the Technical Changes Act as relief legislation and made retroactive to cover a trust like this one; and the value of the property, if any, to be included in the gross estate must be reduced by the value of the consideration received therefor by the decedent.

The provisions of section 811 (c) had given rise to considerable confusion and, following the decisions of the Supreme Court in *Commissioner* v. *Church Estate*, 335 U. S. 632, and *Spiegel Estate* v. *Commissioner*, 335 U. S. 701, Congress enacted the Technical Changes Act. The gross estate was still to include the value at the time of a decedent's death of all property of which he had made a transfer by trust intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. However, the new section 811 (c) (2) provided that if such a transfer was made on or before October 7, 1949, the value should not be included in the gross estate "unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of trans-

fer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property." The transfer here in question was made in 1931 and nothing can be included in the gross estate unless the decedent retained a reversionary interest in the property "arising by the express terms of the instrument of transfer and not by operation of law."

The decedent gave his wife general powers of appointment over the trust property and provided that in default of such appointments the property was to go "to such person or persons as would be entitled thereto under the intestate law of the State of Pennsylvania if she had at that time died seized and possessed of the trust estate." Thus, the reversionary interest, if any, arises in the present case from a combination of the express provisions of the trust instruments referring to the intestate law of Pennsylvania and the operation of that law. No case has come to our attention in which it was decided whether language of that kind gives rise to a reversionary interest by express terms or by operation of law. The third and fourth trusts considered in *Estate of Ellen Portia Conger Goodyear*, 2 T. C. 885, contained similar provisions, but the holding for the petitioner in that case was based upon the remoteness of the reversionary interest, and the question of whether the interest arose by operation of law or by express terms of the instrument was not decided.

The possibility of the petitioner taking a one-third remainder interest in the trust property after the life estate of his wife would not have arisen if he had not incorporated the reference to the intestate law of Pennsylvania in the terms of the trusts, and in that sense the reversionary interest arose by the terms of the instrument. But the statute says they must arise by the "express" terms of the trust. "Express" means directly and distinctly stated and not merely implied or left to inference. Webster's New International Dictionary, Second Edition, 1945. "That is express which is worded with intention." Fowler, Dictionary of Modern English Usage, 1950. It is only transfers "intended" to take effect in possession or enjoyment at or after the death of the decedent which are included in his gross estate under section 811 (c), and the question of intent should not be overlooked in attempting to determine whether any remainders arose by the express terms of the trusts and not by operation of law.

The respondent argues that the decedent was a specific remainderman in each of the trusts after the wife had released her powers of appointment just as clearly as if his name had been mentioned in the instruments as a beneficiary and, therefore, his one-third interests in the residuary estates arose by the express terms of the trusts rather than by operation of law. That argument is not sound. The de-

cedent's remainder interest would have arisen by the express terms of the deed of trust if he had stated (1) that at the death of his wife one-third should be distributed to him, if alive, and two-thirds to his children or if he was dead all to his children, or (2) that the property on the death of his wife should be distributed to those persons who would take under the intestate law of Pennsylvania if she had died seized of the property on the date of the creation of the trust. That is because those two provisions are but two different ways of saying exactly the same thing, and the remainder interest or possibility of remainder interest in the decedent arises by express terms of the trust just as much in the second as in the first case. However, the decedent did not adopt either of those methods but adopted another which could give rise to a wholly different disposition of the property although it might also bring about the same disposition as in the two examples given. The difference in the method adopted from those above mentioned is that, intentionally or unintentionally, the decedent left the possibility of his taking to the operation of the intestate laws of Pennsylvania as they would be at the death of his wife and as they would operate upon circumstances existing in his family as of that time. He had no assurance when he wrote the trust instrument that those laws would remain unchanged. As a matter of fact, the Pennsylvania Intestate Act of 1917 was repealed in 1947 and somewhat different provisions substituted although those relied upon by the respondent here were re-enacted. Furthermore, even at the time he wrote, it was not certain that he would take one-third of the estate under existing laws even if he survived his wife. For example, if later they had been divorced, he would not survive her as a spouse and, therefore, would take nothing. *Romanski Estate*, 354 Pa. 261, 47 A. 2d 233; *Quinn v. Quinn*, 125 Pa. Super. 359, 189 A. 705. Likewise, if he had wilfully neglected, refused to support, or maliciously deserted her for one year or more prior to her death, he would not have been entitled to any part of her estate. Pennsylvania Intestate Act of 1917, P. L. 429, section 41. Thus, his reversionary interest arose in a real sense by operation of law.

The decedent at the time he executed the trusts owed his wife $374,790 as a result of her earlier transfer to him of McClintic-Marshall Corporation shares. The trusts were created to reimburse her, and the terms of the trust instruments indicate that he was trying to give her about as complete an interest in somewhat more valuable property as could be given without making an absolute conveyance of the fee. Nothing was made to turn upon his death by any express provision of the instrument. Cf. *Estate of Houghton*, 2 T. C. 871. The language relied upon by the Commissioner is the usual provision inserted by lawyers as a catch-all. Only by an application of the intestate laws of Pennsylvania and the assumption that those laws

and existing family conditions would not change up to the date of the death of the wife can any reversionary interest be found in the trust instrument. The indications are that the decedent was not thinking of himself or intending to provide that a part of the trust property was to revert to him and was not to pass to others save upon the condition that he predeceased his wife. While what he wrote could have that possible effect, nevertheless, it seems unlikely that he had it in mind. Congress, in enacting section 811 (c) (2), intended that past transfers were not to be subject to estate tax where the decedent had not, by the express terms of the instrument of transfer, indicated a conscious intent that the indispensable event bringing the complete remainder interest to others would be his death. Cf. *Lloyd's Estate* v. *Commissioner*, 141 F. 2d 758. No part of the trust properties may be included in the gross estate of the decedent under section 811 (c). There is nothing in the Commissioner's Regulations to the contrary and this interpretation does not provide a loophole whereby a taxpayer could deliberately avoid Federal estate tax since section 811 (c) (2) applies only to past transfers and future transfers are covered by other provisions under which it is immaterial how the reversionary interest arose.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, *J.*, concurs in the result.

---

TURNER, *J.*, dissenting: I find myself unable to concur in the reasoning of the Court in the disposition of this case. The conclusion is based on the factual and legal premise that the decedent did, at all times, from and after the grant to trust, have and retain an interest in the trust corpus until that interest was terminated by his death. With that premise, I am in hearty accord. It is held, however, that the interest was reserved or remained in the decedent by operation of law, and not by the expressed wording of the trust instrument, and this, because the decedent, instead of describing the interest retained "by metes and bounds," so to speak, utilized by reference the Pennsylvania law of descent and distribution. I am unable to see how the reservation was any the less a reservation by the expressed terms of the trust instrument than it would have been if the decedent, without any mention of the Pennsylvania statute, had described the interest covered, and not only that, but had made it subject to all of the conditions and contingencies which, conceivably, could have intervened, as suggested in the opinion of this Court. Except by the expressed terms of the trust instrument, there could not have been a

reservation of the particular interest which it is conceded the decedent did retain. There is no suggestion whatever of any manner in which the law could possibly have operated so as to retain for the grantor the interest in question had the trust instrument omitted the provisions to that effect. Accordingly, the inescapable conclusion to me is that by the expressed terms of the trust instrument, and not by operation of law, the decedent retained an interest, contingent though it was, in one-third of the trust corpus, which interest did not pass from him until and by reason of his death and does not fall within the exclusion provided in section 811 (c) (1) (C) of the Code.

The views above expressed are directed only to the matters dealt with in the Court's opinion, and do not encompass any consideration of the possible effect of the general power of appointment granted by the decedent to his wife, which power she subsequently relinquished, nor to the effect that should be given to the fact that, to some extent, the trust corpus was in effect supplied by his wife.

DISNEY and HARRON, *JJ.*, agree with this dissent.