## COMMISSIONER OF INTERNAL REVENUE v. MARSHALL'S ESTATE.

### No. 10736.

United States Court of Appeals
Third Circuit.

Argued Oct. 6, 1952.

Decided April 10, 1953.

Walter Akerman, Jr., Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., Robert N. Anderson, Sp. Asst. to the Atty. Gen., on the brief), for petitioner.

Paul G. Rodewald, Pittsburgh, Pa. (George M. Heinitsh, Jr., Carl Cherin, Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., on the brief), for respondents.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This is a petition of the Commissioner of Internal Revenue to review a decision of the Tax Court of the United States.[1]

It poses the question whether any part of certain properties held under two trusts created by the settlor-decedent, Charles D. Marshall, a resident of Pennsylvania, for his wife, Dora, is includible in his gross estate under Section 811(c) (1) (C) of the Internal Revenue Code.[2]

The nub of the controversy is the provision in the trusts that in the event Mrs. Marshall did not exercise granted general powers of appointment the property was to go "to such person or persons as would be entitled thereto under the intestate law of the State of Pennsylvania if she had at that time died seized and possessed of the trust estate", and the fact that under the intestate law of Pennsylvania Marshall would have been entitled to one-third of his wife's estate.

The Tax Court, three judges dissenting, ruled against the inclusion of any part of the trust properties in Mr. Marshall's estate. In doing so it found facts establishing that the trusts for Mrs. Marshall were created by the decedent in consideration of

1. Estate of Charles D. Marshall, 1951, 16 T.C. 918.

2. 26 U.S.C. § 811. It provides:
   "§ 811. *Gross estate*
   "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * *—
   * * * * * *
   "(c) *Transfers in contemplation of, or taking effect at death.*
   "(1) *General rule.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—
   * * * * * *

   "(C) intended to take effect in possession or enjoyment at or after his death.
   "(2) *Transfers taking effect at death—transfers prior to October 8, 1949.* An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. * * *."

and as restitution for property previously transferred by her to him and that the decedent had not by "express terms" retained a reversionary interest in the trust property and that the reversionary interest, if any, existed by reason of operation of law.

The pertinent facts may be summarized as follows:

Marshall died on May 16, 1945; while a resident of Pennsylvania. He was survived by Mrs. Marshall and six children.

On or about December 31, 1930, at Marshall's request and because he required them for business purposes, Mrs. Marshall and the six children transferred to him their second preferred stock holdings in the McClintic-Marshall Corporation. Marshall pledged he would make proper restitution for the stock to Mrs. Marshall and the children. On February 23, 1931, he made out a memorandum indicating that he owed Mrs. Marshall $374,790—the value of the stock she had given him.

At or about that time Marshall submitted to his wife and children the texts of two trust instruments which he proposed to execute and asked them whether the provision of the trusts would be satisfactory restitution for the stock which they had transferred to him. They agreed that the trusts would be satisfactory restitution.

In March, 1931, Marshall created two trusts, for present purposes in identical terms, one-third of which was for the benefit of Mrs. Marshall and in consideration of and in restitution for her earlier stock transfer to him. The deeds of trust provided that the income from a specified part of each trust should be paid to Mrs. Marshall for life and at her death the trusts were to terminate as to those parts and the trustee was to

"* * * pay over and distribute the same in such manner and in such proportions as she shall by her last will and testament direct, limit, and appoint,

and, in default of such appointment, shall pay over and distribute the same to such person or persons as would be entitled thereto under the intestate law of the State of Pennsylvania if she had at that time died seized and possessed of the trust estate."

The intestate law of Pennsylvania in effect at the time of the execution of the two trusts provided that a surviving spouse is entitled to one-third of the estate of a deceased spouse where more than one child or one child and the issue of a deceased child survive.[3]

Mrs. Marshall, on January 26, 1943, relinquished the powers of appointment given her by the trust deeds.

The fair market value of Mrs. Marshall's interest in the two trusts at the time of the transfers was $616,021.66, and at the date of decedent's death was $605,533.34. The value of Mrs. Marshall's life interest at the latter date was $156,972.41.

The Commissioner originally, in determining the deficiency, included in the gross estate $448,912.80 representing the value of the remainder interest after the life estate of Mrs. Marshall in the two trusts. He later revised his deficiency determination to the sum of $448,560.93 and finally, at the hearing before the Tax Court, reduced his claim to one-third of the revised sum— $149,520.31—conceding that the latter was the maximum amount which could have reverted to Marshall under the then (and present) Pennsylvania intestate law.

On this review the Commissioner contends the Tax Court erred in determining (1) the asserted reversionary interest arose by operation of law and not by express terms of the deeds of trust and (2) the indications were that Marshall was not thinking of himself and had no intention to retain a reversionary interest.

It must be noted at this point that the Commissioner does not here contend that

3. Pennsylvania Intestate Act of 1917, P. L. 429, Sec. 1(b); 20 Purdon's Penna. Statutes Annotated, Perm.Ed., Chapter 1.—Appendix, Section 2 provides: "Where such intestate shall leave a spouse surviving and more than one child, or one child and the descendants of a deceased child or children, or the descendants of more than one deceased child, the surviving spouse shall be entitled to one-third part of the real and personal estate."

the Tax Court erred in its finding that the trusts were created in consideration of and as restitution for the $374,790 stock which Mrs. Marshall transferred to him. Accordingly, the Commissioner's claim must be taken to have been reduced (on this review) in consonance with the determined consideration under Section 811(i) of the Internal Revenue Code [4] which provides that the value of the property includible must be reduced by the value of consideration received for the transfer by the settlor-decedent.[5]

In reply to the Commissioner's contention the taxpayer asserts that the Tax Court's decision should be affirmed, not only for the reasons which it assigned in its opinion, but also because the necessary survivorship test for includibility under Section 811(c) (1) (C) is not satisfied.

Upon consideration of the record, the provisions of Section 811 and their legislative history, we are of the opinion that the Tax Court's decision should be affirmed.

First, we are in accord with the Tax Court's determination that Marshall had not by express terms retained a reversionary interest nor indicated a conscious intent to affect such a retention. Second, we are of the opinion that the necessary survivorship test for includibility was not met.

On the first score:

It would serve no useful purpose to restate here what has been so well said by the Tax Court in its opinion with reference to its determination that Marshall had not "by express terms" retained a reversionary interest.

This case is governed by the provisions of Section 811(c) of the Internal Revenue Code as amended by Section 7 of the Technical Changes Act of October 25, 1949, c. 720, 63 Stat. 891.

The Technical Changes Act was designed as relief legislation—relief that is, for the taxpayer.[6] Accordingly, it must be administered with that salient consideration in mind.

█ It is well-settled that words used in a statute must be considered to have been used by Congress in consonance with the common acceptance of the meaning of such words. Application of that principle to the instant case can have but one result. Section 811(c) (2) provides that "An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate * * * unless the decedent has retained a reversionary interest in the property, arising by the *express terms* of the instrument of transfer and not by operation of law * * *." (Emphasis supplied.) The word "express" means "directly and distinctly stated; expressed, not merely implied or left to inference";[7] and "that is express which is worded with intention." [8]

4. 26 U.S.C. § 811(i) Transfers for insufficient consideration. It provides in part: "If any one of the transfers, trusts, interests, rights, or powers, * * * is made, created * * * for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, *there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.*" (Emphasis supplied.)

5. The Tax Court in view of its ruling against the inclusion in Marshall's estate of any part of the trust properties, had no occasion to discuss allocation under section 811(i). On this score it is appropriate to note that Judge Turner in his dissenting opinion expressly stated that although he disagreed with the majority ruling that no part of the asserted reversionary interest was includible, his dissent did *"not encompass any consideration of * * * the effect that should be given to the fact that, to some extent, the trust corpus was in effect supplied by his wife."* (Emphasis supplied.)

6. See Note 2 for the relevant sections of the amended statute which apply retroactively to the estates of deceased dying after February 10, 1939.

7. Webster's New International Dictionary of the English Language, 2d ed., 1945.

8. Fowler, Dictionary of Modern English Usage, 1950.

Clearly there was not a reservation "by express terms" in the instant case. The Commissioner does not even attempt to argue here that there was a retention of a reversionary interest by express terms. What he does say is that "The decedent, clearly had retained a *possibility* of reverter in the trust corpus". While he ignores the requirement that there must be a retention "by express terms" we, of course, cannot do so. The statute has spelled out the requirement that retention of a reverter must be "by the express terms" and "express" and "possibility" cannot be construed as synonymous by any stretch of the imagination.

On the second score:

As previously stated, the Tax Court based its decision on the fact that there had not been a retention of reverter by "express terms" and for that reason apparently did not consider it necessary to rule on the taxpayer's further contention that the transfers made by Marshall were not "intended to take effect in possession or enjoyment at or after his death" within the meaning of Section 811(c) (1) (C).

The taxpayer has asked us on this review to consider the latter question. The sum and substance of its contention in this respect is that a transfer does not come within Section 811(c) (1) (C) unless the beneficiaries must survive the decedent to obtain possession or enjoyment of the transferred interest and in the instant case if the intestate law had been changed, or if decedent had divorced or failed to support his wife, the beneficiaries could have taken the entire remainder even if they had not survived the decedent.

In our view the taxpayer is correct in its contention that the transfer was not intended to take effect in possession or enjoyment at or after the decedent's death.

The "necessary survivorship" rule became part of the Treasury Regulations in 1946, when the so-called "Hallock" regulations were promulgated. Reg. 105, § 81.17, T.D. 5512 (1946). As it originally appeared, the rule provided that a transfer is "intended to take effect in possession or enjoyment at or after his death", and hence the value of the transferred property is includible in the decedent's gross estate, if:

"(1) possession or enjoyment of the transferred interest can be obtained only by beneficiaries who *must* survive the decedent * * *." (Emphasis supplied.)

The legislative history of the 1949 amendments to section 811(c) indicates clearly that the necessary survivorship rule was to remain undisturbed. The Senate Committee on Finance, in approving the amendments, recognized the rule,[9] and, in its discussion of the bill after it was in its final form the Conference Report states:

"* * * The existing rule that a transfer of a property interest is not intended to take effect in possession or enjoyment at or after the decedent's death unless the beneficiaries *must* survive the decedent to obtain possession or enjoyment is not disturbed." (Cum. Bull. 295, 298; Emphasis supplied.)

The Hallock regulations promulgated on March 8, 1951, to implement the 1949 amendments, are to the same effect.[10]

Undoubtedly then, in determining whether a transferred interest which might revert back to the settlor-decedent was intended to take effect in possession or enjoyment at or after his death, we must inquire whether it was possible, immediately prior thereto for some person who need not have survived him to take that interest.[11] Or, otherwise stated, we must determine whether there was any other con-

---

9. 1949–2 Cum.Bull. 289, 294.

10. The 1951 amended Hallock regulations provide (T.D. 5834):
    "(C) * * * A transfer of an interest in property made by the decedent prior to October 8, 1949 * * * is not 'intended to take effect in possession or enjoyment at or after his death' unless possession or enjoyment of the trans-

ferred property can, through ownership of such interest, be obtained *only* by surviving the decedent." (Emphasis supplied.)

11. An analysis of the examples provided in the 1946 Hallock regulations (see in particular Examples 3 and 8) and the 1951 regulations, indicates beyond a doubt that the necessary survivorship rule is

tingency, besides the settlor-decedent's death, upon the happening of which his reverter interest would be entirely cut off. If there was, and that contingency was "real", then the transfer was not intended to take effect in possession and enjoyment at or after his death.

At the moment preceding Marshall's death it was possible for beneficiaries to take the one-third interest without surviving him. This could have resulted (1) by a change in the intestate laws of Pennsylvania, mitigating or eliminating the surviving spouse's share; (2) under the present intestate laws if Marshall had divorced his wife or she had divorced him;[12] (3) if Marshall either wilfully neglected or refused to provide for Mrs. Marshall for one year previous to her death, or if he wilfully

and maliciously had deserted her for that period.[13] Had any one of those things occurred, the one-third interest which decedent would otherwise have gotten, would have gone to persons (the children, if they survived their mother) who would not have had to survive the decedent.

Nor can these contingencies be disregarded on the ground that they are "unreal".[14] They cannot be regarded as "sham",[15] for, as the Tax Court said:

"The indications are that the decedent was not thinking of himself or intending to provide that a part of the trust property was to revert to him and was not to pass to others save upon the condition that he predeceased his wife * * * It seems unlikely that he had it in mind."

to be applied to the circumstances as they existed *immediately prior* to the decedent's death.

The Commissioner relies on Goldstone v. United States, 1945, 325 U.S. 687, 65 S.Ct. 1323, 1326, 89 L.Ed. 1871, for the proposition that we must concern ourselves only with the *actualities* as they existed at the death of the decedent, and not with what *might still* have happened. The Court there said: "Events that might have but failed to take place so as to erase a decedent's reversionary interest must be ignored * * *." But that language was not addressed to the problem under consideration (the case was decided before the Hallock regulations were promulgated), but rather to the problem of whether the decedent had retained a reverter. Taxpayer there contended that since there was a contingency which might have cut off decedent's reverter, decedent retained no reverter even though the contingency never occurred. The Court properly held that in determining whether there is a reverter, events which might have happened to cut it off, but did not in fact happen, must be ignored. In the instant case the decedent retained a reverter, but under the regulations promulgated since the Goldstone case more is required than a reverter. It is now required that the beneficiaries who would take the retained interest if the decedent did not (in this case the children) must only be able to take that interest by surviving the decedent. If we must look only to actualities as they exist at the time of death, and ignore what might have happened but

did not, the regulation would not say "unless possession or enjoyment of the transferred property *can* * * * be obtained *only* by surviving the decedent". They would say "unless possession * * * *is* obtained by surviving the decedent." (Emphasis supplied.)

12. Romanski's Estate, 1946, 354 Pa. 261, 47 A.2d 233; Quinn v. Quinn, 1937, 125 Pa.Super. 359, 189 A. 705.

13. Pennsylvania Intestate Act of 1917, P. L. 429, § 5, 20 Purdon's Penna.Statutes Annotated, Perm.Ed. Chapter 1.—Appendix, § 41.

14. The 1951 Hallock regulations state: "Where possession or enjoyment of the transferred property can be obtained either by surviving the decedent or through the occurrence of some other event * * * the transfer shall not be considered as intended to take effect in possession or enjoyment at or after the decedent's death *unless, from a consideration of its terms and circumstances as a whole, the other event is deemed to be unreal, in which case such other event shall be disregarded.*" (Emphasis supplied.)

15. Bittker, in his article "Church and Spiegel; The Legislative Sequel", 59 Yale L. J. 395, 404 (1950), gives the following example of the "unreal" event; "* * * suppose the remainderman were a member of the Communist Party and could take either by becoming President of Yale University or by surviving the settlor. Under the 'Hallock regulation' no doubt the 'other event' would be unreal."

The possible contingencies taken together under which beneficiaries could have taken the interest without surviving Marshall cannot be regarded as so remote as to be "unreal". . .

Thus, there being another event (or events) upon which the beneficiaries could have taken the one-third interest without surviving the decedent, the transfer was not "intended to take effect in possession or enjoyment at or after his (Marshall's) death" and is therefore not includible in Marshall's gross estate.

For the reasons stated the decision of the Tax Court will be affirmed.