ESTATE OF FRANK W. THACHER, DECEASED, PROVIDENT TRUST COMPANY OF PHILADELPHIA, CATHARINE L. THACHER, FRANKLIN WILLIAM THACHER, JR., AND JOHN HOOVER THACHER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17382.    Promulgated May 28, 1953.

*Thorpe Nesbit, Esq., Logan Morris, Esq., Henry F. Stockwell, Esq.,* and *Hugh Satterlee, Esq.,* for the petitioners.

*Brooks Fullerton, Esq.,* for the respondent.

BRUCE, *Judge:* Respondent has included in the gross estate of the decedent the value of the corpora of all of the trusts here involved, including that for the benefit of the widow. This has been done upon the theory that all of the transfers were made in contemplation of death within the purview of section 811 (c), Internal Revenue Code.[1]

The statute seeks to reach substitutes for testamentary dispositions and thus to prevent the evasion of an estate tax. *United States* v. *Wells*, 283 U. S. 102. The question presented is factual. As the transfers may otherwise have all the indicia of valid gifts inter vivos, the

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

*    *    *    *    *    *    *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

(A) in contemplation of his death ; or

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

(C) intended to take effect in possession or enjoyment at or after his death.

(2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.— An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1). (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term "reversionary interest" includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the commissioner with the approval of the secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate.

(3) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS AFTER OCTOBER 7, 1949.— An interest in property transferred by the decedent after October 7, 1949, shall be included in his gross estate under paragraph (1) (C) of this subsection (whether or not the decedent retained any right or interest in the property transferred) if and only if—

(A) possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the decedent ; or

(B) under alternative contingencies provided by the terms of the transfer, possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the earlier to occur of (i) the decedent's death or (ii) some other event ; and such other event did not in fact occur during the decedent's life.

Notwithstanding the foregoing sentence, an interest so transferred shall not be included in the decedent's gross estate under paragraph (1) (C) of this subsection if possession or enjoyment of the property could have been obtained by any beneficiary during the decedent's life through the exercise of a power of appointment (as defined in Section 811 (f) (2)) which in fact was exercisable immediately prior to the decedent's death.

differentiating factor must be found in the transferor's motive. As the Court said in *United States* v. *Wells, supra:*

> If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to·recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

The question goes to the state of mind of the donor and, in particular, to the controlling motives prompting the disposition. Our finding upon the record that none of the conveyances in trust was made in contemplation of death decides this issue. We have considered carefully the evidence as to the facts and conditions surrounding the transfers and have no doubt as to the correctness of our conclusion. The decedent was a man 44 years of age, in perfect health, and at the peak of his earning capacity. He was a man of great physical energy, taking part in active outdoor sports. The record shows that decedent was accustomed to indulge in speculative investments in which he at times had made large amounts and at others suffered substantial losses. At the time the trusts were created for his wife and four minor children these children were young; in fact another child was born later for whom a similar trust was then created.

At the time the trusts were created petitioner had made a great deal of money and in preparing for the transfers stated that he wished the trusts so conditioned that they would place the transferred securities wholly beyond his control. It is quite evident to us that decedent's dominant motive in making the trusts was to safeguard his wife and children from the contingencies that might arise from unfortunate speculation by him in the future. He would thus free himself from anxiety as to the support, maintenance, and education of his children and the support of his wife and be free to engage in other business transactions he might be inclined to, even though they involved a chance of substantial loss. These motives were connected with life and not death, as the transfers were patently intended principally to meet conditions anticipated to arise during his long life expectancy.

We have taken into consideration the fact that a large part of each trust consisted of insurance upon the decedent's life, and that the nature of life insurance is to an extent testamentary. Anyone making a transfer of property of this character must necessarily have some thought of death in mind. *Estate of Paul Garrett*, 8 T. C. 492, affirmed

in part 180 F. 2d 955. But this consideration appears to us to be far outweighed by his motive to secure safety for his family during his life and to remove the properties transferred from danger of appropriation by him for purposes of speculation and from claims by possible creditors arising as a result of such speculations. See *Estate of Wilbur B. Ruthrauff*, 9 T. C. 418, and authorities discussed therein; *Estate of Verne C. Hunt*, 14 T. C. 1182. Cf. *Estate of George F. Hurd*, 9 T. C. 681. In fact the character of the transfers as representing in large part insurance policies on decedent's life loses much of its significance in the light of proof made that the decedent had for years carried a large amount of life insurance and considered it one of the best investments that could be made. It is also noted that under each of the trust instruments the trustee was given power within his discretion to take at any time the proceeds of the insurance and reinvest them in some other type of security.

Respondent relies largely upon *Estate of Paul Garrett, supra.* There the decedent at the time of the transfer was a man much older than the decedent here, and the facts in that case did not establish definite motives connected with life as predominating over the motive adduced from the character of the property placed in trust. In that case, in affirming our decision, Judge Learned Hand, speaking for a majority of the court, said:

A conveyance of property which the grantee can *by no chance use until the grantor's death*, will so commonly be in the main testamentary, that it is fair to infer that that was its preponderating, if not indeed its only, purpose, *unless there be affirmative evidence of other contributory motives.* * * * [Emphasis supplied.]

Here there was the chance that prior to the grantor's death the insurance might, by action of the trustee, disappear entirely from the corpora of the several trusts. However, the main and deciding factor here is that dominating motives connected with life and not death have been in our opinion affirmatively established.

Our decision that these conveyances in trust were not made in contemplation of death disposes of the issues in respect of the five trusts for the benefit of decedent's minor children, as the decedent retained no interest in the transferred property and under the conveyances the beneficiaries' enjoyment thereof was in no way conditioned upon their surviving the decedent. The petitioners do not oppose the inclusion in gross estate, under section 811 (g), Internal Revenue Code,[2]

---

[2] (g) PROCEEDS OF LIFE INSURANCE.—

(1) RECEIVABLE BY THE EXECUTOR.—To the extent of the amount receivable by the executor as insurance under policies upon the life of the decedent.

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed

of the value of that portion of the insurance proceeds attributable to premiums paid by trust income subsequent to January 10, 1941. Such inclusion appears to have been made by the petitioners in the estate tax return filed.

Our conclusion that the conveyances in trust were not made in contemplation of death disposes of issues two and three which were raised only in the event that it was held that the conveyances were made in contemplation of death.

This brings us to consideration of the trust created for decedent's wife. Our conclusion that the six transfers made by decedent in 1922 and 1924, including the one for the benefit of decedent's wife, were not made in contemplation of death disposes of the contention that the value of the trust created for decedent's wife is includible in decedent's estate, upon that ground. Petitioners concede that section 811 (g) applies to the amount receivable under the wife's trust as insurance at the time of decedent's death, and also that section 811 (c) (1) (C) applies to the remainder interest after the wife's estate. There remains for consideration the issue whether the respondent erred in including in the taxable value of the corpus of the wife's trust, under section 811 (c) of the Internal Revenue Code, the value of the wife's life interest.

With respect to this trust, it is noted that, in the trust instrument, the decedent retained a specific reversion by the provision that in case of divorce or legal separation or in case his wife predeceased him, the corpus of the trust was to be paid over to him by the trustee. The contingency based upon the wife's prior death has not been discussed

---

at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

(3). TRANSFER NOT A GIFT.—The amount receivable under a policy of insurance transferred, by assignment or otherwise, by the decedent shall not be includible under paragraph (2) (A) if the transfer did not constitute a gift, in whole or in part, under Chapter 4, or, in case the transfer was made at a time when Chapter 4 was not in effect, would not have constituted a gift, in whole or in part, under such chapter had it been in effect at such time.

Revenue Act of 1942:

SECTION 404. PROCEEDS OF LIFE INSURANCE.

(a) GENERAL RULE. Section 811 (g) (relating to life insurance) is amended to read as follows:

\* \* \* \* \* \* \*

(c) DECEDENTS TO WHICH AMENDMENTS APPLICABLE. The amendments made by subsection (a) shall be applicable only to estates of decedents dying after the date of the enactment of this Act; but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed any incident of ownership in the policy.

by either of the parties and is not material since the reversion retained conditioned upon death of the wife was not a reversion with respect to the life estate of the wife but only with respect to the remainder interest after the wife's life estate. *Insofar as this contingency is concerned*, the wife's possession and enjoyment of her life interest did not depend upon her surviving the decedent and therefore was not an interest "intended to take effect in possession or enjoyment at or after his death," within the meaning of section 811 (c) (1) (C). See sec. 811 (c) (2)[3] and Regs. 105, sec. 81.17.[4]

With respect to the reversionary interest based upon "divorce or legal separation" petitioners argue that the value of the life estate of the wife may not be included in the gross estate under section 811 (c) inasmuch as the wife's possession and enjoyment of her life estate commenced as soon as the trust was created and did not take effect at or after decedent's death. They further argue that even though intended to take effect in possession or enjoyment at or after decedent's death the wife's life interest, under section 811 (c) (2), may not be included because the value of the decedent's reversionary interest dependent upon divorce or legal separation cannot be determined and must therefore be deemed as having the value of zero and that, in the absence of the reversionary interest having a value in excess of 5 per centum of the corpus of the trust, the wife's life estate is not includible in the decedent's estate.

With respect to the latter contention the record contains no evidence that the reversionary interest based upon the contingency of divorce or legal separation cannot be valued. While this issue was not expressly raised in the pleadings it is believed to be covered by the respondent's notice of deficiency and the explanation of adjustments accompanying the same with respect to the taxable value of the corpus of the trust created for decedent's wife. It is also to be noted that in his opening statement at the time of the hearing herein, respondent called attention to the fact that "in the trust of the wife she was given the income from the corpus, * * * but in the event of a divorce or legal separation between her and decedent, she lost her right to that income and the entire corpus went over to the decedent," and stated that "the question also arises as to what effect is to be given in this

[3] Under sec. 7 (b) of the Act of October 25, 1949 (Public Law 378, 81st Cong., commonly known as the Technical Changes Act of 1949) the amendment made by subsection (a) to sec. 811 (c) of the Internal Revenue Code was made applicable to estates of decedents dying after February 10, 1939.

[4] Example (2) under subsection (b) of sec. 81.17, applicable also to subsection (c) in the case of transfers made prior to October 8, 1949, covers the situation here : "The decedent transferred property in trust, to pay the income to his wife during her life, and at her death to pay the corpus to the decedent if living, and if not, to his children. The decedent was survived by his wife. The value of the transferred property, *less the outstanding life estate in the wife,* is includible in the decedent's gross estate since the children cannot obtain possession or enjoyment of the property, through ownership of their interest, except by surviving the decedent." [Emphasis supplied.]

case to the reversion which the decedent had, in the event that a divorce or legal separation took place." The burden was upon the petitioner to produce evidence that the value of such reversionary interest, immediately before the death of the decedent, could not be determined or that its value was not in excess of 5 per centum of the value of the corpus of the trust. The Court must assume, therefore, that the value did exceed the necessary 5 per centum. *Estate of Francis Louis Slade*, 15 T. C. 752, reversed upon another point, 190 F. 2d 689. Accordingly, the value of the wife's life interest is not excludible by reason of the provisions of section 811 (c) (2).

It becomes necessary, therefore, to consider whether, in view of the reversionary interest retained by decedent based upon divorce or legal separation, in connection with the trust created for his wife, decedent made a transfer of an interest in property "intended to take effect in possession or enjoyment at or after his death," within the meaning of section 811 (c) (1) (C).

Petitioners argue that the wife's possession and enjoyment of her life estate commenced as soon as the trust was created, that it was at all times completely beyond the control and dominion of the decedent who retained no power to terminate it by any act of his own, and that it rested entirely within the control of his wife as to whether or not there would ever be a divorce or legal separation. On the other hand respondent contends that the decedent's transfer in trust for the benefit of his wife did not create a life estate which may be excluded from the gross estate since the life estate was intended to take effect at decedent's death, that the wife's right to income during decedent's life was contingent upon the absence of a legal separation or divorce and only at the husband's death was the possibility of separation or divorce eliminated.

It cannot be questioned that the wife became entitled to *income* from the trust estate immediately upon the transfer in question and that this was a positive, substantial, and present beneficial interest which could have been enforced against the trustee and could not have been cut off or diminished by action of the decedent. It likewise cannot be questioned, however, that by express terms of the trust instrument the decedent retained the right to have the entire corpus of the trust estate returned to him in the event they were divorced or legally separated. This was a condition which affected the life estate of the wife and might terminate it at any time while the parties were alive. Only upon the death of the decedent was this possible termination of the wife's life estate removed. Only then did the wife's interest in the *income* of the trust estate ripen into an absolute, unconditional *life estate*, subject only to termination in event of remarriage.

In the absence of any showing that the value of the retained reversion was not in excess of 5 per centum of that of the corpus of the trust

estate, in which event the Technical Changes Act would apply, the question whether the wife's life estate was intended to take effect in possession or enjoyment at or after decedent's death, is controlled by the Supreme Court's decision in *Helvering* v. *Hallock*, 309 U. S. 106, which held that any expressly reserved possibility of reverter would render the entire value of the transfer taxable. As stated in the Conference Report accompanying the Technical Changes Act,[5] "The existing rule that a transfer of a property interest is not intended to take effect in possession or enjoyment at or after the decedent's death unless the beneficiaries must survive the decedent to obtain possession or enjoyment is not disturbed."

Here, although the wife acquired an interest in the income from the trust estate, immediately upon its transfer, this interest was subject to being cut off in the event she and decedent were divorced or legally separated. She only acquired a life estate, absolute and unconditional, except in event of remarriage, upon her survival of decedent. We therefore hold that the wife's life estate was a transfer "intended to take effect in possession or enjoyment at or after the decedent's death," within the meaning of section 811 (c) (1) (C), and that the value of such life estate is includible in the gross estate of the decedent. Cf. *Commissioner* v. *Estate of C. D. Marshall*, (C. A. 3) 203 F. 2d 534, affirming 16 T. C. 918.

*Estate of Merritt J. Corbett*, 12 T. C. 163, though decided prior to the Technical Changes Act, supports this conclusion. *DuCharme's Estate* v. *Commissioner*, 164 F. 2d 959, 169 F. 2d 76, affirming in part and reversing in part 7 T. C. 705, which petitioners assert is contrary to this Court's decision in the *Corbett* case, turned primarily upon the application of sections 811 (d) (2) and 811 (f) of the Internal Revenue Code, and neither this Court nor the Circuit Court of Appeals discussed the applicability of section 811 (c).

Having determined that the wife's life estate is not to be excluded from the gross estate of the decedent, it becomes unnecessary to determine the value of such estate subject to termination upon remarriage of the widow. It may be observed, however, that such an estate is possible of evaluation, *Estate of Pompeo M. Maresi*, 6 T. C. 582, affirmed 156 .F. 2d 929, *DuCharme's Estate* v. *Commissioner*, *supra*, and that the record contains facts from which such value could be ascertained.

The last issue is upon the allowance as deduction from the gross estate of $3,469.40 as a claim against the estate of certain amounts alleged to have been due and owing from the decedent to his children at the time of his death. The facts in connection with these items are set out in our Findings of Fact. The transactions under which

---

[5] H. Rept. (Conf. Rep.) No. 1412, 81st Cong., 1st Sess., 1942–2, C. B. 295, 298.

these so-called claims arose were ones long prior to decedent's death. What the circumstances were at the time these deposits were made by petitioner in the names of his minor children are not shown. The facts are insufficient for us to determine these items as representing legal claims against decedent's estate. The allowance of the claims by the executor does not appear to have been contested and is not binding in the determination of petitioners' tax liability. *First Mechanics Bank of Trenton, Executor* v. *Commissioner*, 117 F. 2d 127, affirming 40 B. T. A. 876; *Falk* v. *Commissioner*, 189 F. 2d 806, affirming 15 T. C. 49. There is nothing to show that decedent, in the intervening years between the time when these funds were paid over to him and commingled with his personal funds, did not disburse them in some way for the benefit of the children. At the time of the hearing of this proceeding the children were grown but none of them was called as a witness with respect to these alleged items of indebtedness. Respondent is sustained in his disallowance of this item.

Certain issues raised by the pleadings have been abandoned and others involving valuations of properties included in the estate and in the several trusts have been stipulated. These stipulations appear to be of all facts necessary to a computation of the gross and net estate under the foregoing opinion.

Reviewed by the Court.

*Decision will be entered under Rule 50.*